Oral argument not to exceed 15 minutes per side. Mr. Lavelle for the debtor's appellate. May it please the court. I'm Thomas Lavelle. I am the attorney for Collie Lawless, the appellant. The facts of this case are fairly simple. And the facts were stipulated before the bankruptcy court. What we're dealing with is a deferred compensation plan of Mr. Lawless. Mr. Lawless has been employed by Nationwide Insurance Company since approximately 1982, and as an employee he was a participant in a deferred compensation plan. The compensation plan has three parts. The first part of it involves extended earnings, and that is not at issue in this particular case. The second part of the plan involves benefits that had accrued prior to the year 2005. Those benefits at the time that Mr. Collie filed bankruptcy were approximately $175,000. We have conceded in the lower courts that those funds are not exempt, so in reality those funds are not at issue here either. The part that is at issue is the third part of the deferred compensation plan. It's approximately $86,000. Those are amounts that have accrued after the year 2004. So those are the issues that we are dealing with here. Mr. Lawless and his wife filed bankruptcy in late 2010, and at the time of the filing of the bankruptcy he would have been entitled to that $86,000 under the plan. Can I just ask a threshold question? It's really for both of you, and there's no worries if you don't know the answer to it. I don't know the answer to it, but I just wondered if this state law test is meant to map on to federal law about when retirement deferred compensation plans are excluded from federal income. In other words, I'm just wondering if that's where this came from. I've not focused on that specifically. You don't know. You don't know. Okay. My thought is the answer is no, not exactly. I was thinking the answer was yes, because in other words it would be really almost mean-spirited for the legislature to create this kind of thing, but then do it in a way that effectively allowed it not to be treated the way you want it for federal income tax purposes. It would seem like a very strange thing for a state legislature to do, and if it is consistent with federal law, it seems like a really good idea to follow it exactly, because otherwise it's not just your claim, which is a bankruptcy situation, but you'd be exposing a lot of other people to taxation they didn't think they were going to be exposed to. I had not thought of it from that angle, but I suppose Your Honor is correct in saying that. I think the purpose of the statute, as we've looked at it, is to make sure that retirement funds are there, and as under many other federal laws, the legislature, I believe, wanted to make sure that those were funds that were available for retirement, and that's why the year age of 59 is an issue under the statute. And it's also, I think, why it talks about this lump sum problem, and it seems like the contract allows a lump sum. I agree with the part about the legislature was concerned about the lump sum problem, but Your Honor has just identified really the crux of the issue, and the crux of the issue is, one, whether the plan allowed something, a lump sum option, but two, from a factual standpoint, whether this particular debtor could have taken that lump sum option. So the plan itself, we have to concede, would have allowed, at the time, would have allowed the lump sum option. Now the time I'm referring to... Let's stop right there before you get to the second part, which I sensed you wanted to go to right away. I agree with you in terms of what the plan says, but the plan also incorporates these regulations. So the question then, it seems to me, in the first part of your answer depends on whether the regulations that are incorporated in the plan then prevent getting a lump sum within the five-year period. That's correct. So what's your position on that? Our position is this particular debtor could not have received a lump sum and could not have received payments that would pay out in less than 60 months. So what I'm saying is, yes, in 2006, when he signed his beneficiary form, there was an option on the form where he could have opted for a lump sum. However, that would not have complied with Section 409A of the Internal Revenue Code, as Your Honor mentioned. And as of the time of filing of bankruptcy in 2010, this particular debtor, from a factual standpoint, could not have elected to take a lump sum or could not have elected to take payments that were less than 60 months. You look at it as of the time that you filed the petition. That's correct. Even though he could have accessed it earlier. In 2006, when he signed the beneficiary form, four years before bankruptcy, he could have at that point elected a lump sum or a shorter payout. Then that expired, so he couldn't do it later on. He chose not to. He elected a 10-year payout. And under the plan itself, as well as under Section 409A, he can't now go back or let me rephrase that. As of the date of filing bankruptcy, December of 2010. He couldn't have done it at all. He couldn't have done it. I don't understand that because the regulations seem to say that even though you've made an initial election, you can go back and make subsequent elections. In other words, you can change your first election, but then it prescribes what those subsequent elections are limited to. And it seems to say that you can change your election, but you can't change it to something where the payments are deferred for less than five years. That's correct. Converse being it's got to be for over five years. That's correct. But we're not talking about just the Section 409A regulations. We're also talking about the plan itself and the language of the plan itself. And the plan itself, at the time of the filing of the bankruptcy and even today, would not allow Mr. Lawless to go back and receive a lump sum today. And it would not allow him to come back and say, I want payout in four years instead of 10. That is not permitted under the provisions of the plan. And that's why we say under the statute, under the second portion of the statute, that these funds are exempt, that the bankruptcy court should have ruled that they were exempt. So you're saying that he can't change his election at all under the plan? Or you're saying he can change it under the plan, but not for less than 10 years so we don't need to worry about the regulations? What are you saying? I'm saying the second part. He can change his elections. In other words, and off the top of my head, I don't remember what all the elections are. He can change him, but under the language of the plan itself, not necessarily. Independent of the incorporation of the regulations. He can't change it for less than five years even under the clear plan language itself? That's what I'm saying. I mean, the plan itself is intended to comply with the regulations. My understanding of how the plan works is the whole purpose for amending the plan in 2004 or 2005, whenever it was, was to comply with section 409A. And 409A deals with this lump sum provision. But to answer the question, under the language of the plan, which complies with 409A, this debtor cannot currently or at the time of bankruptcy elect to take a lump sum payout or a payout that... If I'm understanding you correctly, it's just because he's made another choice. But the way the statute works is it talks about May. Isn't that the key word? Well, let me look at the exact language of the statute to make sure. Assets are not exempt if the debtor may, at the debtor's option, accelerate payments so as to receive payment in a lump sum or in periodic payments. So the key word is May. You're right. So I guess I'm just struggling with, as I understand your theory, it's, well, he made another choice, which now is inconsistent with this option. But I don't think that's what the statute's at. That could always be true, that you make a different choice. And the point is to, I thought the way this worked under federal law as well was it's exactly the discretion they're getting at, whether you exercise it or not. Well, what we say is we're looking at, I mean, we're looking at kind of, we're looking at the Internal Revenue Code coming in, the bankruptcy law coming in, and the exemptions coming in. And what we say is, yes, that does say May. And in 2006, he could have elected a different option. We can't argue against that. But as of the time of the filing of bankruptcy, that was not an option to him. He couldn't have done it under any circumstances. He could not have done it under it. The way I read the plan, when he filed bankruptcy on December 27th, 2010, he did not have the option under any circumstances to elect for a lump sum payment or a payment. But you're saying that because he already exercised a right for a 10-year payout, right? That's your point. He chose an option and he couldn't change it, yes. Yeah, and I'm just – I guess what I just don't understand about that is that's taking May out of the statute. The point – the May point is to say you're stuck if this is an option. It doesn't matter whether you exercise an option that's inconsistent or you do nothing. It's the fact that you have the – it's the fact that there is discretion that is problematic. I truly do understand what Your Honor is saying. I just don't agree with it. That's all right. I don't – yeah. What's your best case? It's that when I go read the case, I'll say, I get it. My best case is yes, he had the discretion in 2006. No, no. Once he chose that. A precedent, a decision of the Tennessee court. There is none. And that's part of the problems that we have had is there is no discussion on point that deals with this particular statute. I mean there's some general – But there's a lot – this is not an unusual concept. I don't care. I'll take a case anywhere. Alaska. Yeah. I do not have any cases from other jurisdictions. Okay. All I can say is we did research under this particular statute, did not find anything that was directly on point with this. And what we say is under the language of the statute, this debtor did not have the option to accelerate payment when he filed bankruptcy. Okay. We'll get your full rebuttal. Thank you. We'll hear from the friend on the other side. Good morning, Your Honors. John Newton. I'm actually representing myself. I'm actually the trustee in the case also. Wearing two hats. Just to point out the facts that were stipulated, this is an unfunded benefit by Nationwide. There's no money in an account. And the stipulation was it's not a qualified plan. So that's part of our stipulation. So this is just a contractual right to money that the agent's earning. But there's two things that trigger the payment, retirement or death. So in the initial election form as put in by the judge in his opinion, Mr. Lawless did elect a certain payout. But if you look at paragraph three of that plan, it says at your written election received by the companies prior to the time of cancellation, the company will agree to make payments of the extended earnings, et cetera. So there's a continuing right to make an election. And that's in the bankruptcy judge's opinion, that entire form. So I disagree with counsel on that. I think this is simply a Tennessee statute because Tennessee opted out of the federal statutes. 522 is our exemption statutes in bankruptcy. But Tennessee is one of the states that has opted out. So we use for bankruptcy filings our state statute. The state statute they elected to exempt this fund, you know, it boils down to are the assets exempt because currently there's no right to payment. He has not retired or died. So the agreement has not been canceled. So in examining the underlying agreement, it's clear that it does not fall under the statute because the debtor had the right to make certain elections. You mean if he had the right 10 years before he filed for bankruptcy, that's still the right? You look at it as of the time that the plan was initiated or had it adopted? It's not been started. He hasn't died or retired. As you read the end of the judge's opinion, the trustee is only entitled to the funds when one of those triggering events occurred. But because they're not exempt, they would go to the bankruptcy estate. So, again, we have a nonqualified, unfunded, contractual payment due by Nationwide once this gentleman triggers it by cancellation through death or retirement. He can elect to retire. And that will cancel the agreement. And at that time, it's clear from the agreement he can go back. The initial election form is just on file. He can file another election form. Well, the exemption itself starts out by looking at whether it's a pension or a similar plan payable on account of death, age, or length of service. It undisputably is that, right? So it meets the general exemption. Then we look to see whether it fits within any of the exceptions to the exemption. Well, yes. And your first argument on that is that and means or. So you don't have to look at all three of the subparts of the exemption. No, because this is an asset. At the time he filed, it's an asset. He's not entitled to payments right now. He's not in retirement mode. He's not like a 401k. If he's retired, he's receiving payments. Well, that's a qualified plan. That's exempt. That's not an issue in this case. But in this plan, it's only are the assets exempt, as Judge Steyer found. In the last sentence of that 26-111-1D, it says, Assets of such funds or plans are not exempt if the debtor may, at the debtor's option, accelerate payment. So as to receive payment lump sum or periodic payments over a period of 60 months. So he found that the assets that are sitting there, they're not, in fact, funded. But they would be triggered when this gentleman cancels his agreement. So it's not something that's in place right now. But he can't claim it exempt in his 2010 bankruptcy because his plan does not meet the exemption itself. And it's very precise and it's very plain language. And the court so found and the district court so found the same thing. If he has the right to do it, it doesn't fall within the exemption. That's what we were talking about earlier with your co-counsel, your fellow counsel in this case. The plan incorporates the IRS regulations. Well, this is not a qualified plan. That was stipulated. So it's not. Nationwide never sought to qualify this plan. So, in fact, it's not funded. I don't understand why whether or not the plan incorporates the IRS regulations is a question of whether it's a qualified plan. The plan itself says, whether it needed to or not, that it incorporates the regulations. Right? I think that there's some terms in there that says they do. Of course, that's as... Okay. So if the plan itself incorporates the regulations, then why don't we look to the regulations to see whatever they say as to whether you can do something that the plan would otherwise permit but is not permitted by the regulations? Well, I think the plan controls itself. The terms of the plan controls, and then you match that to the exemption itself. So if the plan itself says... I'm not even getting to the exemption. I'm just back on the fundamental question that I still don't understand as to whether the plan does or does not incorporate the IRS regulations in terms of telling the members of the plan what they can and cannot do. I think I call it a guideline to the members of what they can and can't do. I mean, they can pull it out and have it fully taxed if they want. I mean, whatever they want to do, you know, if they trigger taxation, they trigger taxation. But I think that's more of what I look at as more of an instructive situation that happened along the way. Apparently, sometime in 2004, maybe the IRS had some changes in their code sections. This wasn't really an issue at the bankruptcy level. It wasn't an issue at the district court, the taxation of this fund. The only issue in this case and the only issue raised by... I'm not asking you what the tax consequences are. I mean, I realize that a plan could say you can pull the money out, but by the way, you're going to be taxed. So it seems to me the plan and we don't care whether the person has to pay taxes. That's up to them. The question, it seems to me, is does the plan incorporate the IRS regulations in terms of what limitations, if any, the regulations then impose upon what a plan member can do. I mean, I think they refer to it in the plan that we stipulated all the documents. But, again, I'm not trying to...I think there wasn't an issue at the trial. It wasn't an issue on this appeal. So, again, they've raised it in their brief. But, again, whether they would have to comply or don't have to comply with an IRS code section to avoid taxation is not an issue whether the plan that they are a part of is exempt. Here's why I'm asking. So tell me whether this is right or wrong because I don't know either. I want you to assume for a second that the plan incorporates the regulations. I want you to also assume that the regulations seem to say that if you change your election, you can't change it in a manner in which you then receive your payments in anything less than a five-year period. You with me so far? Yes. So assuming that the plan incorporates the regulations and that's what the regulations say, then we take that as what the plan says and we then measure that against the Tennessee statute. The Tennessee statute seems to say you are exempt.  If the plan says that you can't receive them in anything less than five years. Or a lump sum. But I think the terms of the plan as found by the lower court and confirmed by district court found that the plan did allow a lump sum or a period of 60 months or less. But that would have to assume that either I'm wrong about what the regulations say or that the plan doesn't incorporate the regulations. Would it not? Well, if it did incorporate it, I think it did it in a manner that it didn't actually correct the other terms. Well, it would create a conflict. I think if they did it at some point, they might have added on me. It's not artfully drawn. So I looked at it as more of a guideline to the employees, but at the same time it didn't stop them from pulling a lump sum out when they canceled the agreement because their right is vested in this agreement. He started back in 1982. They can't get their money out unless they retire or die. Yes, that's correct. So we're talking about whether you can change an election that would become effective when you retire or die. Well, according to the terms that are in the opinion and are stipulated, you can. Can or cannot? You can. And all the documents, the terms of the documents, and everything was stipulated in this case, and, of course, the lower court, Judge Starr, laid it out in his opinion, the entire agreement, and the relevant portions do provide for the lump sum or a payout that violates the terms of the exemption statute. So the question becomes would the employee do it in violation of the IRS? We don't know. I'm probably a couple steps back here, but what's it mean to get a lump sum, exercise this right to get a lump sum before you can actually get it, right, because you have to die or retire to actually get your hands on the money? That's right. So what does that mean to exercise that right? It just goes outside the plan and sits somewhere else? No, no, you can't really get the funds. They're not in account. We stipulated that. It's just a contractual obligation of Nationwide. I'm just asking what it means. What does it really mean? You can't get your money until you retire or die, right? I think if you die suddenly, you've already made your election. But why would you make an election that doesn't mean anything until you retire or die? Die, you figure, well, my spouse will deal with it or something. On the retire, you wouldn't exercise the election until you retire. That's when you do it. So I'm just trying to figure out what this discretion means. Well, I understand that question. I think, you know, if it's something that you put in place but it says prior to the time of cancellation of this agreement, well, so you can make the election prior to the time it allows you to do that. I guess any time prior, if you said I'm going to retire next week, I'm going to change it to a lump sum. Well, I mean, I guess as I sit here and think about it, it is discretion because retirement is discretion. And, you know, retirement is not like a rule like 59 or over. So it really is complete discretion, although it's arguably somewhat costly. You lose your annual income to get $87,000. To answer the question, wouldn't the administrators of the plan want to know at least what the current thinking is of the recipients as to how they're going to take the money out when they decide how they're going to invest the plan's assets? Granted, somebody can change that. But your investment strategy is going to be different if all your recipients have said I'm going to take the payout over 10 years versus they all said I'm going to take it the moment I retire. Well, the money is not in place in their name. It's just a general obligation of Nationwide. You say it's not funded anyway. Nationwide would just take it out of their general operating funds. Kind of like the Social Security fund in the federal government. Same idea. Well, I would assume that we think that way. That's the way they are administered. Do you know that? I think it's a fluid situation. I think the agent could decide if he's healthy and wants to retire. He could say, well, I think I want to change my election to this. Now, he might be guided by some regulations by the IRS and taxation, which might be a good idea. But nevertheless, there are agreements in place, and the agent has the option under that paragraph 3 to set up an election in a manner that he decides or she decides to do. And, again, that's what the bankruptcy court found. And, therefore, having that option at any time disqualified it from this exemption. And the exemption was clear, and it wasn't ambiguous. And, again, he elected to file bankruptcy, and this doesn't fall within our state exemptions. Would you feel differently about this if the only option related to death, which is not classically discretionary? No, I still wouldn't because, see, he's alive. He could, you know, in planning and state planning, he could make his election at any time because, obviously, he's going to go to a beneficiary if he dies or go to his wife or children. So he can certainly do a state planning just like anyone would do. If you have a 401K, you have a beneficiary elected. So if something happened before you retired. I mean, but it says, the May says that the debtor's option, so as to receive. I mean, it's a present tense thing. So it seems funny to say if the way you're thinking about this, oh, heck, you know, and your will and everything, you direct how this is to be done. You're not, quote, receiving. Well, the key thing is if you look at the document that he actually signs, it says initial election form. So I think using the word initial, meaning it's not really the final election. He certainly has discretion that he can wake up any day and he can change it every day. So the initial election form was signed at one point historically, but for any reason. You have no cases? Your friend on the other side didn't have any cases there. Do you have a case that helps us? Well, there's a Massey case decided by the court. Here is a Tennessee Court of Appeals case that actually reviews that same statute. And it says, the assets are not exempt if the debtor has the option to accelerate payment and receive all the assets in lump sum or periodic payments over a period of 60 months or less. It's cited in the Tennessee Court of Appeals case in the materials, so Massey case. So, again, it's just a Tennessee statute. There are similar statutes around the country, but this is a particular statute that he would have to qualify in Tennessee. Thank you. All right. Thanks so much. Your Honor, I want to kind of take a step back. If you're looking at the plan as it existed prior to 2004, it didn't have these two separate portions of compensation. It was just deferred compensation. So prior to 2004, we were just talking about the deferred compensation where Mr. Wallace could have taken a lump sum. And then in 2004, Congress passed Section 409A. So this is a relative 409A under the Internal Revenue Code is relatively new. The way that I look at 409A, the purpose of that was to stop people or at least incentivize people to use their money for retirement, not to take lump sums, not to take short payouts, but to actually use these funds for an actual retirement. That's the same purpose of the Tennessee statute. The Tennessee statute is want if somebody is using those funds for an actual retirement. It's something that's going to be spread out over time. The Tennessee legislature, what I am saying by enacting this particular statute, is saying we want those funds to be reserved for individuals to use for their retirement. Here's what I don't understand about the dispute here, and I wonder if we even really need to get where you're going. I'm looking at the agent security compensation plan, and first it starts out by saying you can change your election at any time. So that seems to favor the trustee. Then the next sentence says 409A also imposes restrictions on how and when you may change your election. Now, you could then say that that's incorporating what these restrictions are and you have to follow them, or you could say, well, it's just warning you that there are other restrictions that if you violate them there might be tax consequences. That's sort of where our argument has gone so far. But then it goes on to say further, distribution of any such post-2004 DCIC and extended earnings subject to the election change, now it's time to talk about what happens if you do exercise your election to make the change, will not commence until five years after the distribution under the prior election would have occurred. So the plan itself, independent of 409A, seems to say that yes, you can change it, but no matter what you change it to, it's not going to commence for five years. So then we have to figure out when does that five-year period commence in order to see whether it does or does not match up with the exception to the exemption. Am I saying that correctly? Yes, you are saying that correctly. I'm going to add one thing to it. There is a provision under the plan that says you can make an election, however, the election cannot take effect until at least 12 months before you separate from service, or did I say that right? You have to get, in other words, you have to make the election at least 12 months before there's an actual separation, so 12 months before death. But here's the problem. If the five-year period starts when you made the initial election, if five years has gone by, then the five years has already been satisfied under the plan and you could get it in less than five years. If the period of five years starts at the time you make your, if we say the period of five years starts at the qualifying event, then you can't get it for five years plus 12 months or 72 months. So how do we know when it starts? What the plan says, it starts not when you make the first election, but when you change your election. He hasn't changed his election at this point. So if he were to change his election today, it would be more than five years before he could get his money. Okay, so tell me what I'm missing here. But going backwards in time, he could get a lump sum, which is not over any period of time. It's a lump sum, and he can get it, it sounds like, in 12 months by retiring right away. No. No. Not now. No. You're saying in 2006, right, Your Honor? Exactly. So at that point in time, he could have retired and gotten all of the money 12 months later. Is that the earliest? That's correct. Okay. So what we're saying is— I know what you're saying, but I'm just responding to the conversation you were just having. From a legal standpoint, what Your Honor just said was accurate as of 2006, but it was not the state of facts in 2010 when this individual filed bankruptcy, and it was not the state of facts today. He, at that time and today, he could not have factually received either a lump sum or a payout of less than five years. Just so that I understand this language that I was reading, it's not speaking to whether once you get the distribution, you get the distribution over a period of time or whether you get it in a lump sum at that time. It just says you can't get any money for a period of five years, and you say, plus 12 months, at which time either you've then changed your election to say it's a lump sum, you get it all at once at that point, or you've decided to defer it over a longer period of time. After the five years— After the 72 months. That's what you're saying. That's what I'm saying. Okay. Well, thanks for all your efforts here to answer our questions. We appreciate it. Thanks for the briefs as well. This case will be submitted, and the clerk may call the next case.